**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** _____ |
| | : | |
| | : | **UNDER SEAL** |
| **v.** | : | |
| | : | **Violations:** |
| | : | |
| **YOUNG N. CHO, also known** | : | **18 U.S.C. § 371 (Conspiracy)** |
| **as, ALEX N. CHO,** | : | |
| | : | **18 U.S.C. § 201(b) (Bribery of a** |
| **Defendant.** | : | **Public Official)** |
| | : | |
| | : | **18 U. S. C. § 2 (Aiding and Abetting** |
| | : | **and Causing an Act to be Done)** |
| | : | |
| | : | **28 U.S.C. § 2461 (Criminal Forfeiture)** |

**I N F O R M A T I O N**

The United States Attorney charges:

**Relevant Entities and Individuals**

1.      From in or about 2007 through the present, the defendant, YOUNG N. CHO, also known as ALEX N. CHO (" ALEX N. CHO"), was the Chief Technology Officer of Nova Datacom, LLC ("Nova Datacom").

2.      Nova Datacom was a provider of information assurance and security services to federal agencies and commercial companies.  In September 2007, Nova Datacom was certified by the U.S. Small Business Administration ("SBA") as an 8(a) small disadvantaged business.  Nova Datacom maintained its corporate headquarters in Chantilly, Virginia.

3.      The United States Army Corps of Engineers ("USACE") was a branch of the United States Army made up of approximately 34,000 civilian and military personnel.  The Headquarters for the USACE was located at 441 G Street, N.W., in the District of Columbia.  The USACE's stated

mission was to "provide vital public engineering services in peace and war to strengthen our Nation's security, energize the economy, and reduce risks from disasters." The Directorate of Contingency Operations ("DCO") was a branch of the USACE. The USACE administered the Technology for Infrastructure, Geospatial, and Environmental Requirements ("TIGER") Contract.

4.     The TIGER Contract was a vehicle that authorized federal government agencies and departments used to purchase products and services. The TIGER Contract was an audited and awarded Indefinite Delivery/Indefinite Quantity ("IDIQ") contract. As a result, such authorized agencies and departments were not required to obtain three separate bids or to compare the TIGER Contract to another contract before submitting an invoice for products and services through the TIGER Contract. The current TIGER Contract was a five-year contract running from October 1, 2009 through September 30, 2014. Over that term, the total award of orders placed against the TIGER Contract was authorized to exceed $1,000,000,000.

5.     The Contingency Operations Readiness Engineering & Support (the "CORES") Contract was a planned IDIQ contract. The CORES Contract, which if approved and issued would be administered by the USACE, would offer authorized departments and agencies an alternative to the TIGER Contract. As planned, the CORES Contract would be a five-year contract with an award potential for all contracts placed against the contract of up to $780,000,000. The CORES Contract has not been issued for solicitation to potential prime contractors.

6.     Public Official A was a Program Manager with the USACE's DCO at Headquarters in Washington, D.C. Public Official A was involved in, among other things, placing orders for the DCO through federal government contracts, including the TIGER Contract and the potential CORES Contract.

7.      Public Official B was a Program Director with the USACE's DCO at Headquarters in Washington, D.C.  Public Official B was responsible for, among other things, obtaining funding for USACE orders placed through federal government contracts, including the TIGER Contract and the potential CORES Contract.

8.      In 1971, Congress passed the Alaska Native Claims Settlement Act ("ANCSA"), which created thirteen regional Alaska Native Corporations ("ANC") and approximately 200 local village ANCs to stimulate Alaska's economy and settle land disputes between the United States Government and Alaskan natives.  In 1986, Congress authorized regional and village ANCs to be included in the SBA 8(a) program, which was designed to assist small disadvantaged businesses compete for government contracts.  ANCs were granted unique procurement advantages beyond those available to other 8(a) participants, including the following exemptions:

- The $5.5 million for goods and $3.5 million for services maximum for non-competitive (sole-source) contracts an 8(a) firm can receive.  ANCs may receive sole-source awards of unlimited value.

- Limits on the number of firms that ANCs can own.  ANCs may own multiple subsidiaries provided each business is in a different industry.

- The requirement that 8(a) businesses be managed by economically and minority disadvantaged owners.  The ANSCA automatically conferred "economically disadvantaged" status upon ANCs.

9.      Company A was an Alaska Native-owned Small Business and the prime contractor for the TIGER Contract.  Company A maintained offices in Dulles, Virginia.

10.     Employee A-1 was the Director of Contracts of Company A.

11.     Company B was a Virginia limited liability company formed in or around November 2008.  Company B maintained offices in Alexandria, Virginia.  Employee B-1 controlled Company B.

12.     Company C was incorporated in Virginia in or around February 2009.  Company C maintained offices in Annandale, Virginia.  Employee C-1 controlled Company C.

13.     AssureIT LLC ("AssureIT") was a Virginia limited liability company formed in or around October 2009 and controlled by ALEX N. CHO.

## The Bribery Scheme through the TIGER Contract

14.     In or around July 2007, ALEX N. CHO met Public Official A.  In or around July 2007, Public Official A agreed to use his official position to award an order to Nova Datacom.  In return, ALEX N. CHO agreed to pay, and later paid, Public Official A a portion of the profit earned by Nova Datacom from the order.  Public Official A stated to ALEX N. CHO that Public Official A would provide additional orders for the benefit of Nova Datacom.

15.     In or around early 2008, Public Official A met with ALEX N. CHO and explained to ALEX N. CHO that Public Official A had a rapid acquisition contracting vehicle – the TIGER Contract – that was unique to the USACE.  As an authorized and approved IDIQ, Public Official A could direct orders to Nova Datacom under the TIGER Contract for equipment and services without having to obtain three separate bids or to compare the TIGER Contract to another contract.  In or around February 2008, ALEX N. CHO and Public Official A agreed to inflate an order awarded under the TIGER Contract by approximately $93,000.  In return, ALEX N. CHO agreed to pay, and later paid, Public Official A the approximately $93,000 to Public Official A in return for Public Official A agreeing to award the order to Nova Datacom.

-4-

16.     Thereafter, Public Official A introduced ALEX N. CHO to Public Official B.  In meetings with those individuals, Public Official A and Public Official B agreed to fund, direct, and approve orders for the benefit of Nova Datacom in exchange for money and other things of value provided by ALEX N. CHO and Nova Datacom to Public Official A and Public Official B.

17.     Public Official A also introduced ALEX N. CHO to Employee A-1.  In meetings with Public Official A and Employee A-1, Employee A-1 agreed to facilitate processing by Company A of orders awarded for the benefit of Nova Datacom under the TIGER Contract in exchange for money and other things of value provided by ALEX N. CHO and Nova Datacom to Employee A-1.

18.     As directed by Public Official A, Public Official B, and Employee A-1, ALEX N. CHO caused Nova Datacom to submit fraudulently inflated quotes to the USACE and Company A. The fraudulently inflated amounts were referred to as "overhead."  The "overhead" referred to the fictitious and overpriced equipment and services included on the quotes submitted by Nova Datacom.  For quotes placed through the TIGER Contract, Company A took the fraudulently inflated quotes and created invoices that it submitted to the USACE.  Public Official A used his official position to cause the USACE to approve and remit payment to Company A for the fraudulently inflated orders.  After subtracting its profit margin, Company A paid the remainder to Nova Datacom.  This remainder included payment for the overhead.  As directed by Public Official A, Public Official B, and Employee A-1, ALEX N. CHO caused Nova Datacom to pay a portion of the "overhead" directly and indirectly to Public Official A, Public Official B, and Employee A-1.

19.     From in or about 2008 through on or about March 2, 2011, as directed by Public Official A, Public Official B, and Employee A-1, ALEX N. CHO caused Nova Datacom to submit quotes to Company A and the USACE for total costs exceeding $45,000,000.  Of that amount, there

was approximately $18,700,000 in "overhead." That is, as directed by Public Official A, Public Official B, and Employee A-1, ALEX N. CHO caused Nova Datacom to fraudulently inflate the amount of those quotes by approximately $18,700,000.

20.     From in or about July 2007 through on or about March 2, 2011, as directed by Public Official A, ALEX N. CHO offered, promised, and provided things of value directly and indirectly to Public Official A in excess of $17,000,000, including, among others, the following: (a) payments to Public Official A personally and to accounts controlled by Public Official A; (b) payments to a home improvement contractor to renovate multiple properties for the benefit of Public Official A; (c) payments to multiple retailers to furnish and improve properties for the benefit of Public Official A, including flat screen televisions, computer equipment, and furniture; (d) payments to two close family members of Public Official A for employment with Nova Datacom; (e) payments for the benefit of three close family members of Public Official A; (f) payments to car dealerships to lease and purchase Acura TL-S, BMW M3, BMW 335i, BMW X6, and Infiniti G35 automobiles for the benefit of Public Official A and three close family members of Public Official A; (g) payments to criminal defense attorneys and a criminal defense investigator for the benefit of a close family member of Public Official A; (h) payments to improve property in Berkeley Springs, West Virginia intended for the benefit of Public Official A; (i) payments to and for the benefit of Public Official A's mistresses in Virginia, Florida, and the Philippines; and (j) miscellaneous payments for the benefit of Public Official A, including two Rolex watches, high-end liquor, clothing expenses at Nieman-Marcus, first-class airline tickets, and luxury international hotel accommodations.

21.     From in or about 2008 through on or about March 2, 2011, as directed by Public Official A and Public Official B, ALEX N. CHO offered, promised, and provided things of value

directly and indirectly to Public Official B in excess of $1,000,000, including, among others, the following:  (a) payments to Public Official B personally and to at least one account controlled by Public Official B; (b) payments to a close family member of Public Official B for employment with Nova Datacom; (c) payment to a retailer of approximately $21,000 to purchase a Cartier watch intended for a close family member of Public Official B; (d) payments of approximately $1,000,000 to an intermediary in South Korea to purchase property and an Audi A4 automobile for Public Official B's mistress in South Korea; (e) the promise of future employment for Public Official B at Nova Datacom; and (f) miscellaneous payments for the benefit of Public Official B, including first-class airline tickets for Public Official B, a close family member of Public Official B, and Public Official B's mistress in South Korea.

22.     From in or about 2008 through on or about March 2, 2011, as directed by Public Official A and Employee A-1, ALEX N. CHO offered, promised, and provided things of value directly and indirectly for the benefit of Employee A-1 in excess of $700,000, including, among others, the following:  (a) cash payments directly to Employee A-1 and a nominee account identified by Employee A-1; (b) payments for first-class airline tickets for the benefit of Employee A-1; and (c) the promise of future employment at Nova Datacom for Employee A-1.

### The Bribery Scheme through the CORES Contract

23.     In or about March 2010, ALEX N. CHO, Public Official A, Public Official B, Employee A-1, and others agreed to work together to steer the potential award of the CORES Contract to Nova Datacom.  Public Official A, Public Official B, Employee A-1, and ALEX N. CHO intended to use the CORES Contract as a vehicle to enable Nova Datacom, if selected as the prime contractor for the CORES Contract, to funnel monies and other things of value directly and indirectly

to Public Official A, Public Official B, Employee A-1, and ALEX N. CHO.   From in or about March 2010 through on or about March 2, 2011, ALEX N. CHO promised, offered, and paid things of value to Public Official A, Public Official B, Employee A-1, and others to attempt to steer the award of the CORES Contract to Nova Datacom.

### The Scheme to Defraud through False Statements

24.     In or about July 2007, Nova Datacom submitted an Application to the SBA for certification as an 8(a) small disadvantaged business.  In its Application, employees and agents of Nova Datacom, including ALEX N. CHO ("Nova Datacom Representatives"), provided false information concerning, among other things, the educational background for ALEX N. CHO, the educational background and employment status of a purported employee of Nova Datacom, and the initial intent of Nova Datacom's sole owner to run the day-to-day operations of Nova Datacom.  In or about October 2007, based in part on those false statements, the SBA certified Nova Datacom as an 8(a) small disadvantaged business.

25.     Following its certification by the SBA, Nova Datacom Representatives submitted written responses to solicitations from federal agencies to provide services.  As part of those written responses, Nova Datacom Representatives provided past performance references and evaluations from corporate entities that purportedly had contractual relationships with Nova Datacom ("Nova Datacom References").   From in or about November 2007 to in or about December 2010, Nova Datacom Representatives knowingly submitted false past performance references and evaluations to federal agencies to fraudulently burnish the qualifications of Nova Datacom to perform federal contracts.

26.     In or about December 2007, Nova Datacom submitted pricing information to the United States General Services Administration ("GSA") on labor categories that Nova Datacom charged and sought to charge Federal agencies for contracts awarded to Nova Datacom through a GSA multiple awards schedule.  The proposed labor rates purported to reflect discounts off the best customer rate offered by Nova Datacom to three Nova Datacom References.  The proposed labor rates were false because Nova Datacom had no contracts in force with those References.  On or about March 28, 2008, based in part on those false statements, the GSA awarded Nova Datacom the GSA Multiple Awards Schedule No. GS-35F-0322U under Schedule 70 (Information Technology) with Special Item Number ("SIN") 132-51, and approved the labor categories and the per hour labor rates to be charged by Nova Datacom on contracts awarded under the multiple awards schedule.

## The Scheme to Defraud through Kickbacks

27.     In or about September 2010, at the direction of ALEX N. CHO, Employee B-1 caused Company B to submit fraudulently inflated invoices to Nova Datacom as a subcontractor to Nova Datacom on orders awarded to Nova Datacom through the USACE.  ALEX N. CHO caused Nova Datacom to remit payment to Company B for the fraudulently inflated invoices.  In return, Employee B-1 caused payment for a portion of the fraudulently inflated amounts to be made to ALEX N. CHO.

28.     In or about September 2010, ALEX N. CHO and Employee C-1 agreed to pay kickbacks to Employee C-1 in return for subcontracts awarded to Nova Datacom through the United States Department of the Army.  With Employee C-1's assistance, Nova Datacom obtained a subcontract to provide services to the Army.  In return, Nova Datacom agreed to pay a portion of its profits from the subcontract to Employee C-1.  Beginning in or about December 2010, as directed

by Employee C-1, Nova Datacom paid a portion of the profits derived from its contract with the Army for the benefit of Employee C-1.

## COUNT ONE
### (Conspiracy to Commit Bribery of a Public Official, Wire Fraud, and Money Laundering, and to Defraud the United States)

29.     Paragraphs 1 through 28 of this Information are realleged and incorporated by reference as if set out in full.

30.     From in or about July 2007 through on or about March 2, 2011, in the District of Columbia and elsewhere, the defendant, ALEX N. CHO, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States and to defraud the United States and agencies thereof, that is,

a.     directly and indirectly, corruptly gave, offered, and promised things of value to public officials, namely Public Official A and Public Official B, and corruptly offered and promised things of value to such Public Officials personally and to other persons and entities as directed by such Public Officials, with the intent to influence official acts, to influence such Public Officials to commit and aid in committing, collude in, and allow fraud, and make opportunity for the commission of fraud on the United States, and to induce such Public Officials to do and omit to do acts in violation of the lawful duty of such Public Officials, in violation of Title 18, United States Code, Section 201(b)(1);

b.     knowingly engaged and attempted to engage in the transfer of the proceeds of a specified unlawful activity, that is: bribery of a public official, in violation of Title 18, United States Code, Section 201(b)(1), of a value greater than $10,000 and derived from specified unlawful

activity, and that affected interstate and foreign commerce, in violation of Title 18, United States Code, Section 1957;

      c.      knowingly and with intent to defraud devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting so to do, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals for the purpose of executing such scheme and artifice, that is, did knowingly cause to be sent, delivered, and moved by interstate wire false information to the SBA to obtain certification of Nova Datacom as an 8(a) small disadvantaged business, false past performance references and evaluations to federal agencies to fraudulently burnish the qualifications of Nova Datacom to obtain and attempt to obtain federal contracts, and false pricing information to the GSA to set and attempt to set artificial prices on federal contracts awarded to Nova Datacom pursuant to a GSA multiple awards schedule, in violation of Title 18, United States Code, Section 1343; and

      d.      knowingly and with intent to defraud devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for the purpose of executing such scheme and artifice and attempting so to do, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals for the purpose of executing such scheme and artifice, that is, did knowingly cause to be sent, delivered, and moved by interstate wire the payment and receipt of kickbacks from federal contracts, in violation of Title 18, United States Code, Section 1343.

**Goal of the Conspiracy**

31.     It was a goal of the conspiracy that the defendant, ALEX N. CHO, and others would

and did enrich themselves through the award by the USACE of fraudulently inflated orders to Nova

Datacom, the attempt to steer the award of the CORES Contract by the USACE to Nova Datacom,

the procurement by Nova Datacom of federal government contracts through the submission of false

information to the SBA, false past performance references to federal agencies, and false pricing

information to the GSA, and the payment and receipt of kickbacks from federal contracts.

**Means and Methods of the Conspiracy**

32.     Among the means and methods by which the defendant, ALEX N. CHO, and his co-

conspirators would and did carry out the conspiracy were the following:

        a.      Public Official A and ALEX N. CHO agreed to cause Nova Datacom to

submit fraudulently inflated quotes to Company A and the USACE.

        b.      Public Official A and Public Official B caused federal departments and

agencies to fund orders for the benefit of Nova Datacom.

        c.      Public Official A used Public Official's A's official position to cause the

USACE to remit payments to Company A and Nova Datacom for the fraudulently inflated orders

awarded to Nova Datacom.

        d.      Employee A-1 used Employee A-1's position at Company A to facilitate the

processing of the orders awarded to Nova Datacom through the TIGER Contract.

        e.      Public Official A, Public Official B, and Employee A-1 directed ALEX N.

CHO to pay a portion of the orders to Public Official A, Public Official B, and Employee A-1.

f.     ALEX N. CHO promised, offered, and paid and caused Nova Datacom and others to pay a portion of the orders to Public Official A, Public Official B, and Employee A-1.

g.     Public Official A, Public Official B, Employee A-1, ALEX N. CHO, and others agreed to steer and attempted to steer the award of the CORES Contract by the USACE to Nova Datacom.

h.     ALEX N. CHO promised, offered, and paid things of value to Public Official A, Public Official B, and Employee A-1 to attempt to steer the award of the CORES Contract by the USACE to Nova Datacom.

i.     Nova Datacom Representatives, including ALEX N. CHO, provided false information to the SBA to obtain certification of Nova Datacom as an 8(a) small disadvantaged business.

j.     Nova Datacom Representatives, including ALEX N. CHO, provided false past performance references to federal agencies to burnish the qualifications of Nova Datacom to procure and attempt to procure federal government contracts.

k.     Nova Datacom Representatives, including ALEX N. CHO, provided false pricing information to the GSA to set and attempt to set artificial prices on federal contracts awarded to Nova Datacom pursuant to a GSA multiple awards schedule.

l.     ALEX N. CHO and Employee B-1 agreed that Employee B-1 would pay monies to ALEX N. CHO from inflated invoices submitted by Company B to Nova Datacom.

m.     ALEX N. CHO and Employee C-1 agreed to pay kickbacks to Employee C-1 in return for subcontracts awarded to Nova Datacom through the Department of the Army.

**Overt Acts**

33.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the defendant, ALEX N. CHO, and his co-conspirators committed the following overt acts, among others, in the District of Columbia and elsewhere:

a.     On or about July 3, 2007, Nova Datacom Representatives submitted an Application to the SBA for certification as an 8(a) small disadvantaged business that provided false information concerning, among other things, the educational background for ALEX N. CHO, the educational background and employment status of a purported employee of Nova Datacom, and the initial intent of Nova Datacom's sole owner to run the day-to-day operations of Nova Datacom.

b.     On or about December 10, 2007 and March 25, 2008, Nova Datacom Representatives submitted written responses to the GSA in connection with Solicitation Number FCIS-JB-980001B that falsely represented to the GSA that Nova Datacom had performed information technology related projects with three Nova Datacom References.

c.     On or about December 10, 2007 and March 25, 2008, Nova Datacom Representatives submitted to the GSA the per hour labor rates that Nova Datacom proposed to charge federal agencies for eighteen labor categories in connection with Solicitation Number FCIS-JB-980001B that falsely represented the hourly rates charged by Nova Datacom.

d.     On or about February 21, 2008, Company A issued Purchase Order #PO002646 MOD1 to Nova Datacom for the delivery of equipment to the USACE's Headquarters in Washington, D.C., attention Public Official A, for a total price of $236,000.  As directed by Public Official A, ALEX N. CHO caused the order to include a fictitious line item that fraudulently inflated the cost to the USACE by approximately $93,000.

e.      On or about June 10, 2008, Company A issued Purchase Order #PO002859 to Nova Datacom for the delivery of equipment to a USACE facility in Mobile, Alabama, for a total price of $818,046.68.  As directed by Public Official A, ALEX N. CHO caused the order to include a fictitious line item that fraudulently inflated the cost to the USACE by approximately $186,000.

f.      On or about July 17, 2008, Company A issued Purchase Order #PO002927a to Nova Datacom for the delivery of equipment to a USACE facility in Fort Belvoir, Virginia, attention Public Official A, for a total price of $1,812,884.55.  As directed by Public Official A, ALEX N. CHO caused the order to include two line items that were not delivered that fraudulently inflated the cost to the USACE by approximately $673,460.40.

g.      On or about September 11, 2008, Company A issued Purchase Order #PO002859 MOD 2 to Nova Datacom, for a total price of $777,700.68.  As directed by Public Official A, ALEX N. CHO caused the modification to add three fictitious line items to Purchase Order #PO002859 that fraudulently inflated the cost to the USACE by approximately $103,150.

h.      On or about September 23, 2008, Company A issued Purchase Order #PO003214 to Nova Datacom for the delivery of equipment to a USACE facility in Vicksburg, Mississippi, for a total price of $743,605.85.  As directed by Public Official A, ALEX N. CHO caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by approximately $254,190.

i.      On or about September 30, 2008, Company A issued Purchase Order #PO003326 to Nova Datacom for the delivery of services to the USACE's Headquarters in Washington, D.C., attention Public Official A, for a total price of $2,734,540.  As directed by Public

Official A, ALEX N. CHO caused the order to include services that were not delivered that fraudulently inflated the cost to the USACE by approximately $426,920.

          j.     On or about September 30, 2008, Company A issued Purchase Order #PO003326a to Nova Datacom for the delivery of equipment and services to the USACE's Headquarters in Washington, D.C., attention Public Official A, for a total price of $1,658,818.47. As directed by Public Official A, ALEX N. CHO caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by approximately $1,400,000.

          k.     On or about October 3, 2008, Company A issued Purchase Order #PO003326e to Nova Datacom for the delivery of equipment to the USACE's Headquarters, attention Public Official A, for a total price of $89,635. As directed by Public Official A, ALEX N. CHO caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by the entire price of $89,635.

          l.     On or about October 3, 2008, Company A issued Purchase Order #PO003343 to Nova Datacom for the delivery of equipment to the USACE's Headquarters, attention Public Official A, for a total price of $47,500. As directed by Public Official A, ALEX N. CHO caused the order to include equipment that was not delivered that fraudulently inflated the cost to the USACE by the entire price $47,500.

          m.     On or about December 18, 2008, ALEX N. CHO wired $29,463 to a third-party conduit for the intended benefit of Public Official B.

          n.     On or about December 18, 2008, the third-party conduit issued a check payable to Public Official B for $29,463.

o.      On or about December 24, 2008, ALEX N. CHO wired $31,000 to a third-party conduit for the intended benefit of Public Official B.

p.      On or about December 24, 2008, the third-party conduit issued a check payable to Public Official B for $30,357.

q.      On or about March 24, 2009, ALEX N. CHO paid $60,000 to a close family member of Public Official A.

r.      On or about March 27, 2009, ALEX N. CHO paid $100,000 to a close family member of Public Official A.

s.      On or about April 29, 2009, Nova Datacom wired $230,000 to a corporate account controlled by and for the benefit of Public Official A.

t.      On or about May 22, 2009, Company A issued Purchase Order #PO003773 to Nova Datacom for the delivery of equipment and services to the USACE's Headquarters, attention Public Official A, for a total price of $2,343,540.88.  As directed by Public Official A, ALEX N. CHO caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by the entire price of $2,343,540.88.

u.      On or about August 11, 2009, Company A issued Purchase Order #PO003884 to Nova Datacom for the delivery of equipment and services to the USACE's Headquarters, attention Public Official A, for a total price of $6,780,767.75.  As directed by Public Official A, ALEX N. CHO caused the order to include equipment and services that were not delivered that fraudulently inflated the cost to the USACE by approximately $3,533,541.48.

v.      On or about September 24, 2009, Company A issued Purchase Orders ##PO004158, PO004159 and PO004162 to Nova Datacom for the delivery of equipment and

services to several USACE facilities, attention Public Official A, for a total price of $16,035,677.35. As directed by Public Official A, ALEX N. CHO caused the order to include prices for equipment and services that fraudulently inflated the cost to the USACE by approximately $6,000,000.

w.      On or about December 3, 2009, AssureIT paid $500,000 to a corporate account controlled by and for the benefit of a close family member of Public Official A.

x.      On or about December 9, 2009, AssureIT issued a check for $498,762 payable to a corporate account controlled by and for the benefit of Public Official A.

y.      On or about December 9, 2009, Nova Datacom issued a check for $3,332,351.65 payable to a corporate account controlled by and for the benefit of Public Official A.

z.      On or about December 10, 2009, AssureIT issued a check for $130,000 payable to Employee A-1.

aa.     On or about February 25, 2010, AssureIT issued a check for $71,460.20 payable to Employee A-1.

bb.     On or about August 2, 2010, Nova Datacom issued a check for $602,893.26 payable to a corporate account controlled by and for the benefit of Public Official A.

cc.     On or about September 14, 2010, AssureIT issued a check for $487,286.13 payable to a corporate account controlled by and for the benefit of Public Official A.

dd.     On or about September 30, 2010, Company A issued Purchase Order #PO005205 to Nova Datacom for the delivery equipment and services to the USACE in Washington, D.C., attention Public Official A, for a total price of $9,207,679.20.  As directed by Public Official A, ALEX N. CHO caused the order to fraudulently inflate the cost to the USACE by approximately $3,000,000.

ee.     On or about October 8, 2010, Nova Datacom remitted payment to Company B for $543,560 for services provided to Nova Datacom.

ff.     On or about October 13, 2010, Employee B-1 caused Company B to kickback to ALEX N. CHO $300,000 of the payment made by Nova Datacom to Company B.

gg.     On or about December 14, 2010, Nova Datacom remitted payment to Company B for $599,865 for services provided to Nova Datacom.

hh.     On or about December 17, 2010, Nova Datacom remitted payment to Company B for $599,865 for services provided to Nova Datacom.

ii.     On or about December 17, 2010, Employee B-1 caused Company B to kickback to ALEX N. CHO $174,682.50 of the payment made by Nova Datacom to Company B.

jj.     On or about December 24, 2010, Employee B-1 caused Company B to kickback to ALEX N. CHO $174,682.50 of the payment made by Nova Datacom to Company B.

kk.     On or about December 30, 2010, as directed by Employee C-1, Nova Datacom paid a kickback to an account for the benefit of Employee C-1 of $58,050.14 of a payment made by a federal department to Nova Datacom.

ll.     On or about February 7, 2011, Company A issued a modification to Purchase Order #PO005208c to Nova Datacom for the delivery of equipment and services to the USACE in Washington, D.C., attention Public Official A, for a price of $2,952,604.77.  As directed by Public Official A and Employee A-1, the order falsely described the equipment and services that Nova Datacom intended to provide to Company A for delivery to the USACE that fraudulently inflated the cost to the USACE by approximately $574,000.

**(Conspiracy, in violation of Title 18, United States Code, Section 371.)**

## COUNT TWO
### (Bribery of a Public Official)

34.     Paragraphs 1 through 28, 32, and 33 of this Information are realleged and incorporated by reference as if set out in full.

35.     From in or about July 2007, to on or about March 2, 2011, in a continuing course of conduct, in the District of Columbia and elsewhere, defendant ALEX N. CHO did directly and indirectly, corruptly give, offer, and promise things of value to public officials, namely Public Official A and Public Official B, and corruptly offered and promised things of value to such Public Officials personally and to other persons and entities as directed by such Public Officials, with the intent to influence official acts, to influence such Public Officials to commit and aid in committing, collude in, and allow fraud, and make opportunity for the commission of fraud on the United States, and to induce such Public Officials to do and omit to do acts in violation of the lawful duty of such Public Officials, to wit, ALEX N. CHO gave, offered, and promised approximately $18,000,000 for the personal use of Public Official A and Public Official B in return for Public Official A and Public Official B funding and approving orders for Nova Datacom and providing preferential treatment for Nova Datacom with potential contracts awarded through the USACE.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Sections 2 and 201(b)(1)(A), (B), and (C))**

## FORFEITURE ALLEGATION

36.     The allegations set forth in Count One and Count Two of this Information are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

37.     As a result of the offenses alleged in Count One and Count Two of this Information, the defendant, ALEX N. CHO, shall forfeit to the United States, any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses of conspiracy to commit bribery, to commit wire fraud, and to commit money laundering, in violation of Title 18, United States Code, Section 371, and bribery, in violation of Title 18, United States Code, Section 201(b), including, but not limited to:

### Money Judgment

judgment in favor of the United States of America for a sum of money equal to the value of the property constituting or derived from, any and all proceeds the defendant obtained, directly or indirectly, as a result of the offenses alleged in Count One, in violation of Title 18, United States Code, Section 371, and Count Two, in violation of Title 18, United States Code, Section 201(b).

38.     By virtue of the commission of the felony offenses charged in Count One and Count Two of this Information, any and all interest that defendant ALEX N. CHO has in property constituting, or derived from, proceeds obtained directly or indirectly as the result of the conspiracy and bribery, is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).  If, as a result of any act or omission of defendant ALEX N. CHO, the property identified above:

a.     cannot be located upon the exercise of due diligence;
b.     has been transferred or sold to, or deposited with, a third person;
c.     has been placed beyond the jurisdiction of the Court;
d.     has been substantially diminished in value; or
e.     has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and incorporating by reference Title 21, United

States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value

of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(1)(C), and Title 28 United States Code, Section 2461(c))**.

RONALD C. MACHEN JR.
United States Attorney
In and For the District of Columbia


By: _____/ss/_____

MICHAEL K. ATKINSON
D.C. Bar No. 430517
BRYAN SEELEY
D.C. Bar No. 501681
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
202.252.7817 (Atkinson)
202.252.1749 (Seeley)
Michael.Atkinson2@usdoj.gov
DATED: September 9, 2011                Bryan.Seeley@usdoj.gov