**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO.: 11-267 (EGS)** |
| | **:** | |
| **YOUNG N. CHO, a/k/a ALEX CHO,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD**
**DEPARTURE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, the United States Attorney for

the District of Columbia, hereby submits this motion for downward departure pursuant to Section

5K1.1 of the United States Sentencing Guidelines ("USSG" or "Guidelines") and memorandum in

aid of sentencing concerning the defendant, Young N. Cho, also known as Alex Cho ("Cho").

The Pre-Sentence Report ("PSR") calculated the defendant's total offense level under the

Guidelines at 36 and a Criminal History Category II (210-262 months).   *See* PSR at p. 33, ¶ 188.

Pursuant to the plea agreement, the government submits that the total offense level under the

Guidelines should be 35 and a Criminal History Category II (188-235 months).

**SUMMARY OF THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government submits that a sentence at an offense level 35 (pre-departure) is reasonable

in light of, among other things, the seriousness of the offense, the need to specifically deter the

defendant, and the need to afford adequate general deterrence.   The defendant was a critical

participant in the largest domestic bribery and bid-steering scheme in the history of federal

contracting.   In his role as the Chief Technology Officer for a government contracting firm, Nova

Datacom, LLC ("Nova Datacom"), the defendant engaged in a corporate crime spree from 2007

1

through March 2011 that included lying to the United States Small Business Administration ("SBA") to obtain Nova Datacom's status as a disadvantaged business, lying to various federal agencies about past performance references to obtain increasingly large government contracts, lying to the United States General Services Administration ("GSA") about the prices Nova Datacom charged on government contracts, paying over $18 million in bribes to public officials to obtain and retain government contracts, conspiring with public officials to attempt to steer a nearly $1 billion planned government contract to Nova Datacom, paying approximately $700,000 in kickbacks to an employee of a prime contractor to facilitate the award of subcontracts, receiving approximately $650,000 in kickbacks from a subcontractor, and lying to investigators about the involvement of others in the crime spree.

Since agreeing to cooperate with investigators on March 3, 2011, however, the defendant has attempted to make some amends for his wrongful conduct.  As described in greater detail below, the defendant provided substantial assistance to law enforcement in the investigation and prosecution of others, including corrupt public officials and other corrupt government contractors. Although the defendant's substantial assistance was marred by instances in which he actively obstructed justice both before and after he began cooperating, the government submits that a downward departure is nevertheless appropriate.  As a result, the government recommends a six-level downward departure under Section 5K1.1 of the Guidelines, which results in a total offense level of 29 (97-121 months).  The government recommends the mid-point of that advisory Guidelines range (106 months).

In addition, as discussed below, the government recommends an additional six-month downward departure under *Smith* v. *United States,* 27 F.3d 649 (D.C. Cir. 1994), due to the

likelihood that the defendant's immigration status will change to that of a deportable alien and, thus, he may be subjected to harsher conditions of imprisonment than an otherwise identical citizen would face.   As a result, the government specifically recommends a sentence of 100 months imprisonment, three years of supervised release, forfeiture in an amount to be determined,[1] and restitution in the amount of $17,220,247.83 payable to the United States Army Corps of Engineers ("USACE").

## FACTUAL BACKGROUND

On September 20, 2011, the defendant pleaded guilty to a two count Information, which charged conspiracy to commit bribery, money laundering, and wire fraud, in violation of 18 U.S.C. § 371 (Count One), and bribery of a public official, in violation of 18 U.S.C. § 201 (Count Two). In the Statement of Offense, which Cho signed as part of his plea agreement, the parties agreed that Cho was Nova Datacom's Chief Technology Officer.   Nova Datacom was a provider of information assurance and security services to federal agencies and commercial companies.   In September 2007, Nova Datacom was certified by the SBA as an 8(a) small disadvantaged business.   The President of Nova Datacom was Cho's sister, Min Cho.[2]

On March 3, 2011, following the issuance of subpoenas to Nova Datacom, Alex Cho appeared with his attorneys at the U.S. Attorney's Office and began providing information on bribe payments made by Nova Datacom to two civilian program managers at the United States

---

[1]     The parties continue to negotiate an agreed upon forfeiture amount.

[2]     On April 11, 2013, Min Cho pleaded guilty to a one count Information charging conspiracy to commit bribery.   The same day, Nova Datacom pleaded guilty to a four count Information that charged conspiracy to defraud the United States and three counts of bribery of public officials.   Min Cho and Nova Datacom are cooperating in the investigation and pending sentencing.

Army Corps of Engineers ("USACE"), Kerry Khan ("Khan") [3] and Michael Alexander ("Alexander"). [4]  Cho admitted inflating purchase orders approved by Khan to obtain contracts from USACE, and using the proceeds from the inflated purchase orders to pay bribes to Khan and Alexander.  From in or about 2008 through March 2011, Cho caused Nova Datacom to submit invoices for equipment and services to USACE for approximately $45 million.  Of that amount, Cho admitted that over $18 million was inflated and/or fictitious.  Cho admitted paying approximately $17 million in bribe payments to Khan and approximately $1 million in bribe payments to Alexander.  Cho also admitted paying approximately $700,000 in kickbacks to Harold F. Babb, the Director of Contracts at Eyak Technology, LLC, to facilitate processing of Nova Datacom's invoices. [5]

Cho also admitting paying bribes and kickbacks to Khan, Alexander, and Babb to steer a nearly $1 billion planned government contract to Nova Datacom.  The planned contract was disrupted by law enforcement agents as part of the investigation.

---

[3]     On May 17, 2012, Khan pleaded guilty to Counts 2 (bribery of a public official) and 4 (money laundering conspiracy) of an Indictment returned against him and others on September 19, 2011.  On July 11, 2013, Khan was sentenced to 235 months imprisonment.

[4]     On February 13, 2012, Alexander pleaded guilty to Counts 2 (bribery of a public official) and 4 (money laundering conspiracy) of an Indictment returned against him and others on September 19, 2011.  On September 13, 2012, Alexander was sentenced to 72 months imprisonment.

[5]     On March 13, 2012, Harold Babb pleaded guilty to Counts One and Two of a Superseding Information, which charged Bribery of a Public Official and Aiding and Abetting, in violation of 18 USC §§ 201(b)(1)(A), (B), and (C) and 2 (Count One), and Unlawful Kickbacks, in violation of 41 USC § 8702(2) (Count Two).  On October 18, 2012, he was sentenced to 87 months imprisonment.

In addition to paying bribes to Khan and Alexander at USACE, Cho has admitted paying bribes to a former Army contracting officer, identified in court papers as Public Official C, to obtain government contracts for Nova Datacom.   Cho has admitted conspiring to pay $40,000 in cash to Public Official C through Cho's former business partner, Nick Park,[6] and providing other things of value, including a $10,000 casino chip and lodging for Public Official C's family in Las Vegas, Nevada, in return for government contracts.[7]

In addition to the bribery and bid steering schemes, Cho also admitted providing false information to various federal agencies.   First, Cho admitted that Nova Datacom submitted false information to the SBA in July 2007 to obtain Nova Datacom's certification as a woman-owned, disadvantaged small business concern.   Specifically, Cho admitted falsifying his own educational background, the educational background and employment status of a purported employee of Nova Datacom, and the initial intent of Cho's sister, Min Cho, to run the day-to-day operations of Nova Datacom.   Second, Cho admitted participating in a scheme in which Nova Datacom submitted false past performance references to federal agencies to obtain government contracts.   Third, Cho admitted participating in a scheme in which Nova Datacom submitted false pricing information to

---

[6]     On June 20, 2012, Park, a former employee of Nova Datacom and, later, the co-founder of another government contracting firm, Unisource Enterprises, Inc., pleaded guilty to a two count Information charging bribery of two public officials (Khan and Public Official C). Park is cooperating in the investigation and pending sentencing.

[7]     Because the conduct concerning Public Official C is not related to the offenses of conviction and was disclosed by the defendant as part of his cooperation, it should not be included as relevant conduct for purposes of determining the offense level under Section 1B1.3 of the Guidelines.   Instead, the government provides this information concerning the character and conduct of the defendant for the purpose of assisting the Court in imposing an appropriate sentence.   *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 1B1.4 (same).

the GSA for contracts awarded to Nova Datacom through a GSA schedule.   Fourth, Cho admitted

obstructing justice and providing false information to investigators in an effort to prevent

investigators from learning that Cho's sister, Min Cho, and one of Cho's closest friends, Thomas

Kwon ("Kwon"), were involved in the bribery scheme.[8]   Finally, Cho admitted tipping off Kwon

to the fact that Cho was wearing a recording device on August 18, 2011, during a period of time

when Cho was an active government cooperator and Kwon was under investigation for, among

other things, paying bribes to Public Official C.

## ARGUMENT

I.    **The defendant provided substantial assistance in the investigation and prosecution of others.**

The government moves for a downward departure under Section 5K1.1 of the Sentencing

Guidelines.   Alex Cho provided substantial assistance in the investigation and prosecution of the

following individuals, who have each pleaded guilty to various bribery, kickback, theft, and/or

money laundering charges: Michael Alexander; Harold Babb; Min Cho; Larry Corbett; Kerry

Khan; Lee Khan; Nazim Khan; Thomas Kwon; Robert McKinney; James Miller; Nova Datacom;

and Nick Park.   Cho debriefed on numerous occasions between March 2011 and October 2011.

Starting shortly after his initial debriefing session on March 3, 2011, at the direction of law

enforcement, Cho engaged in consensually recorded meetings and telephone calls with Alexander,

Babb, Corbett, Kerry Khan, Lee Khan, Thomas Kwon, and others.   During some of those

consensually recorded meetings, Cho paid bribes and kickbacks to Alexander and Babb,

---

[8]       On November 9, 2012, Kwon, the co-founder and Chief Financial Officer of a
government contracting firm, Avenciatech, Inc., pleaded guilty to a two count Information
charging bribery of a public official (Public Official C) and bank fraud.   Kwon is cooperating in
the investigation and pending sentencing.

respectively.   The interviews and consensually recorded meetings allowed investigators to obtain authorization to intercept the wire and electronic communications on the cellular telephones used by Alexander, Babb, and Kerry Khan.   In addition, Cho's information was used, in part, to obtain seizure warrants for multiple bank accounts, vehicles, real properties, and jewelry.

From March 2011 through October 2011, Cho was an extremely active cooperator.   He met or communicated with the FBI or prosecutors on a daily or almost-daily basis.   He frequently conducted recorded meetings and phone calls with the other perpetrators of the scheme.   He generally adhered to the talking points he was given, and he was remarkably effective in eliciting incriminating statements and actions.   The recordings and information provided by Cho during the time of his cooperation were crucial to the government's eventual prosecution of the other perpetrators.   Cho also provided substantial assistance in the investigation of a former Army contracting officer, Public Official C.

Although extremely valuable in the investigation and prosecution of others, Cho also provided false statements to investigators and twice attempted to obstruct the investigation during the time of his cooperation.   First, Cho provided false and misleading information to investigators from March 3, 2011 through June 2, 2011, concerning his knowledge of bribe payments to the former Army contracting officer, Public Official C, as well as the knowledge of his sister, Min Cho, and his close personal friend, Thomas Kwon, concerning the bribery scheme.   Prior to June 2, 2011, Cho concealed information about Public Official C from investigators and provided false statements to investigators concerning Cho's introduction to the corrupt USACE officials.   On June 2, 2011, Cho initially stated that he met with Public Official C in Hawaii and met subsequently with Public Official C on a number of occasions, but denied being aware of any

corrupt payments to Public Official C.   Suspecting that Cho was not being truthful about Public Official C, investigators confronted Cho later in the day on June 2, 2011.   At that point, Cho admitted that Public Official C had received corrupt payments from Cho and others.   Cho informed investigators that he had intentionally withheld information on the bribe payments to Public Official C because he knew such information would implicate Min Cho and Thomas Kwon. In admitting that he and others, including Kwon, had paid bribes to Public Official C, Cho admitted that he had conspired with Kwon and Min Cho before he began debriefing in March 2011 to mislead investigators about Public Official C, Kwon, and Min Cho in the hope that investigators would not learn about the corrupt involvement of Kwon and Min Cho in the bribery scheme.   As part of that agreement, Cho stated that Kwon and he destroyed records before Cho began cooperating that would have implicated Public Official C and Kwon in the bribery scheme.[9]

Second, Cho attempted to obstruct the criminal investigation on August 18, 2011, during a consensually recorded meeting between Alex Cho, Min Cho, and Thomas Kwon.   Despite Cho's admissions that he obstructed the investigation both before and after he began cooperating, Cho continued to cooperate with investigators as part of the covert investigation after June 2, 2011. Cho agreed to assist investigators by, among other things, engaging in consensually recorded calls and meetings with Thomas Kwon in an effort, in part, to corroborate Cho's statements to investigators that Kwon had bribed Public Official C. On August 18, 2011, at the request of law enforcement, Cho met with Kwon and Min Cho at Nova Datacom's offices.   During the meeting, Alex Cho intentionally and silently motioned to Kwon that Alex Cho was wearing a recording

---

[9]      Kwon admitted the corrupt agreement to mislead investigators through Alex Cho's false and misleading statements to investigators.   Kwon also admitted that Cho and he destroyed documents before Cho began debriefing with investigators.

device.   Cho also wrote down on a piece of paper that Kwon should say back to Cho, in substance, "tell them the truth."   Cho showed the piece of paper to Kwon.   As prompted by the directions written down by Cho on the piece of paper, Kwon can be heard on the recording telling Cho, in substance, to "tell them the truth" in response to questions put to Kwon by Cho.   During the meeting, Kwon mentioned Public Official C.   In response, according to Kwon, Cho silently motioned to Kwon to refrain from discussing Lim.   Kwon understood that the intent of Cho's messages was to protect Kwon in the criminal investigation.   Kwon voluntarily disclosed Cho's conduct to investigators on November 3, 2011, which was two months after Cho signed his plea agreement and entered a guilty plea.[10]   Cho did not disclose the conduct to investigators before Kwon's disclosure on November 3, 2011.   Following Kwon's disclosure, law enforcement agents ceased using Cho as a cooperator.

Despite Cho's attempts to obstruct the investigation, which were ultimately unsuccessful, the government moves for a downward departure based on Cho's substantial assistance.   Cho's interviews, recorded statements, recorded bribe payments, and other assistance led to plea agreements with twelve defendants, including his sister and his own company, and the recovery of millions of dollars in forfeited assets.   Further, Cho's obstructive efforts were designed primarily to help his closest friend, Thomas Kwon, and his sister, Min Cho, but both Kwon and Min Cho have since pleaded guilty.   Based on this substantial assistance, the government recommends a six-level downward departure, resulting in a total adjusted offense level of 29 (97-121 months).

---

[10]      Alex Cho was interviewed about this conduct on November 4, 2011.   Cho did not dispute Kwon's account of the meeting.

**II.      Based on the sentencing factors in 18 U.S.C. § 3553(a), the government recommends a sentence of 100 months imprisonment.**

**A.      The applicable advisory Guidelines range should be 188-235 months.**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   *Gall v. United States*, 552 U.S. 38, 49 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range").   Although advisory, the Guidelines assure some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.   Reference to the Guidelines, while carefully considering the factors set forth in 18 U.S.C. § 3553(a) particularly relevant to an individual defendant, minimizes the disfavored result of basing sentences on the luck of the draw in judicial assignments.   Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."   *Gall*, 552 U.S. at 50 n.6.

**1.      The parties' stipulated Guidelines range**

Here, the parties stipulated to certain of the applicable Guidelines, but disagreed as to others.   The parties agreed that the following Guidelines sections applied to the charges:

| | | |
|---|---|---|
| § 2C1.1(a)(1) | Base Offense Level | 12 |
| § 2C1.1(b)(1) | More than one bribe | 2 |
| § 2C1.1(b)(2) | More than $7,000,000 in payments | 20 |
| § 3B1.1(c) | Aggravating Role (organizer/leader) | 2 |
| § 3E1.1(a) and (b) | Acceptance of Responsibility | (3) |
| Total | | 33 |

### 2.     The parties' disputed Guidelines ranges

The government and the defendant agreed as part of the plea agreement to reserve arguments on the applicability of certain Guidelines.   The government reserved the right to maintain at sentencing that a four-level enhancement applied under U.S.S.G § 2Cl.l(b)(3) because the offense involved a public official in a high-level decision-making position.   The defendant reserved the right to maintain at sentencing that such an enhancement should not apply.   The government, however, does not seek an enhancement under U.S.S.G. § 2Cl.l(b)(3).

The government also reserved the right to maintain at sentencing that a two-level enhancement applied under § 3C1.l because the offense involved obstructing or impeding the administration of justice.   The defendant reserved the right to maintain at sentencing that such an enhancement should not apply under § 3Cl.l.   The government submits that a two-level enhancement for obstruction of justice is appropriate based on the following:   (1) Cho's acknowledgment that Cho obstructed justice by providing false information to investigators about the involvement of Public Official C, Thomas Kwon, and Min Cho in the bribery scheme; (2) Kwon's acknowledgment that Cho and Kwon obstructed justice by destroying documents related to Public Official C after the investigation began; and (3) admissions by Cho and Kwon that Cho tipped off Kwon to Cho wearing a recording device and Cho's subsequent conduct on August 18, 2011, during a meeting between Cho, Min Cho, and Thomas Kwon.

The defendant reserved the right to maintain at sentencing that a two-level downward departure applied under *Smith* v. *United States,* 27 F.3d 649 (D.C. Cir. 1994), due to the possibility that the defendant's immigration status would change to that of a deportable alien and, thus, he may be subjected to harsher conditions of imprisonment than an otherwise identical citizen would

face. The government agrees that a *Smith* departure is appropriate given the defendant's likely deportation following any period of imprisonment.   The government recommends a six-month downward departure based on *Smith*.[11]

The government reserved the right to maintain at sentencing that a downward departure under § 5K2.16 did not apply.   Cho reserved the right to maintain at sentencing that up to a four-level downward departure was appropriate under *§* 5K2.16 based on Cho's contention that he voluntarily disclosed the existence of, and accepted responsibility for, the offenses prior to their discovery and the offenses were unlikely to have been discovered otherwise.   The government submits that such a downward departure is inappropriate because of the following factors:   (1) some of the offenses were known to the government before Cho's disclosures began on March 3, 2011, such as the fraudulent application submitted to SBA, the fraudulent past performance references submitted to various agencies, and the fraudulent pricing information submitted to GSA; (2) the government likely would have discovered evidence of the bribery scheme without Cho's admissions given (a) information known to the government before March 3, 2011, about Nova Datacom's employment of relatives of Kerry Khan and Michael Alexander, and (b) financial records already under subpoena that would have evidenced some of the corrupt payments to Khan and Alexander; and (3) Cho's obstructive efforts both before and after he began cooperating with

---

[11]     The primary justification for a <u>Smith</u> departure is a deportable alien's ineligibility "for the benefits of 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences (<u>but no more than six months</u>) under conditions—possibly including home confinement—that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community." <u>Smith</u>, 27 F.3d 650-651 (emphasis added) (internal quotation marks omitted).   If the defendant were provided a two-level <u>Smith</u> departure in this case, he would receive a reduction in sentence much greater than six months, and he would essentially benefit from his status as a deportable alien.

the government on March 3, 2011, demonstrate a lack of acceptance of responsibility for certain aspects of the offenses.

### 3.    The Probation Office's proposed Guidelines range.

The Probation Office determined that Cho's total offense level was 36.   *See* PSR at p. 20, ¶ 121.   The one-point difference between the government's recommended offense level (35) and the Probation Office's determination (36) is that the Probation Office added a three-point enhancement for Cho's role in the offense for more than five criminal participants.   *Id.* ¶ 115. The government's recommended offense level included a stipulated two-point enhancement for Cho's role in the offense as an organizer, leader, manager, or supervisor, but did not include a third point for more than five criminal participants.   The Probation Office is correct, however, that there were more than five criminal participants in the offenses of conviction.[12]

### B.    The nature and circumstances of the offense support a within-Guidelines sentence.

The nature and circumstances of the offense demonstrate that a Guidelines sentence at an offense level 35 (pre-departure) is reasonable in light of the extraordinary circumstances of the offenses of conviction.   The defendant was a critical participant in a $20 million bribery scheme. The defendant engaged in bribery and kickback schemes through corrupt dealings with two USACE employees (Khan and Alexander), a former Department of the Army employee (Public Official C), the Director of Contracts for the prime contractor (Harold Babb), and two subcontractors (ETSI and Avenciatech).   The loss to the government was not limited to the value

---

[12]    The Probation Office agreed that a four-level enhancement did not apply under U.S.S.G § 2Cl.l(b)(3) because the offense did not involve a public official in a high-level decision-making position.   The Probation Office also agreed with the government that a two-level enhancement applied under § 3Cl.1 based on Cho's obstructive acts and that a four-level downward departure under U.S.S.G. § 5K2.16 did not apply.

of the public officials' honest services, but included over $17 million in procurement fraud.   That is, Cho did not have to go "out of pocket" to pay the bribes to Khan and Alexander.   Instead, he used stolen monies obtained through fraudulently inflated and fictitious invoices, which were approved by Khan, to finance the bribe payments to Khan and Alexander.

Through the course of the conspiracy, Cho also was one of the central figures in the attempt to steer to Nova Datacom a planned contract, the Contingency Operations Readiness Engineering & Support (or "CORES") Contract.   The co-conspirators intended the value of the CORES Contract to reach nearly $1 billion over a five-year period.   If successful, the co-conspirators would have had a thoroughly corrupt enterprise – Nova Datacom – as the prime contractor and gateway to nearly $1 billion in government funding.   This conduct falls squarely within the heartland of the Guidelines concerning bribery, money laundering, and wire fraud.[13]

The motive for the defendant's criminal conduct is easily identified: greed on a massive scale.   The defendant primarily used his ill-gotten gains to finance a lavish lifestyle, including expensive cars, jewelry, clothes, furnishings, and a $2 million home in Great Falls, Virginia. Pictures of the interior of the home, which was sold in January 2012 for $1,900,000, are attached at Tab 1.

---

[13]      The "loss" amount under Section 2C1.1(b)(2) is based on the value of the bribe payments intended for the benefit of Khan and Alexander through the prime contract, which was known as the Technology for Infrastructure, Geospatial, and Environmental Requirements (or "TIGER") Contract.   The loss amount does not include the amount of profit the co-conspirators intended to obtain through their efforts to steer the CORES Contract to Nova Datacom.   The CORES Contract had an award potential for all contracts placed against it of up to $790,000,000, with an expressed intent to seek an increase after award for an additional 25 percent, for a total award value of nearly $1 billion.   A ten-percent annual profit margin on the CORES Contract, which was consistent with, for instance, the TIGER contract, would have resulted in an intended benefit to be received by Nova Datacom of nearly $100 million.   As a result, the stipulated Guidelines Level 35 arguably understates the intended harm to the government.

C.      **The history and characteristics of the defendant**.

The history and characteristics of the defendant demonstrate that a Guidelines sentence at an offense level 35 (pre-departure) is reasonable in light of the need to protect society from the defendant for a significant period of time.   Alex Cho is a citizen of South Korea who came to the United States legally as a child in 1981.   According to the PSR, the defendant was born in South Korea, moved with his family at age three to Buenos Aires, Argentina, and moved with his family at age nine to Northern Virginia.   The defendant's parents had an intact marriage and the defendant's primary needs were met without hardship, trauma, or abuse.   The defendant has an older brother and an older sister, and he remains on good terms with them.

The defendant's criminal and anti-social behavior began as a teenager.   The defendant began abusing drugs and engaging in crime related to the drug use at the age of sixteen.   At the age of nineteen, following his graduation from high school, the defendant was arrested for burglary and grand larceny after breaking into a home and stealing approximately $600,000 worth of jewelry.   The defendant was convicted in November 1991 and sentenced to twenty years imprisonment, but served only five years imprisonment.   He was released on parole in 1996.

Following his release on parole, the defendant began working at various technical companies performing network administrative and engineering functions.   Through self-study and test centers, he acquired certifications in various computer programs and operations.   In February 2004, the defendant started Nova Datacom.   By 2010, the defendant grew Nova Datacom into a company with over $40 million in gross earnings.

As discussed above, however, Nova Datacom was built entirely through fraud.   Nova Datacom obtained its SBA 8(a) certification in 2007 through a fraudulent application.   It obtained

commercial contracts through false past performance references.   It obtained access to a GSA Schedule through false pricing information.   Despite the corrupt advantages those fraudulent practices provided to Nova Datacom, the company could not compete legitimately.   So, with Nova Datacom struggling to meet payroll in late 2007, the defendant chose to grow Nova Datacom's business through corrupt relationships with crooked public officials and subcontractors.   Through those corrupt relationships, the defendant sowed the seeds of his business' dizzying rise and extraordinary demise.

The defendant's manipulative skills were not confined to business, but also extended to immigration.   During a portion of the bribery and fraud scheme, from June 2007 through at least 2008, Cho was in regular contact with law enforcement agents but did not disclose his unlawful conduct to them.   Additional information is contained in the Pre-Sentence Report.   *See* PSR at p. 23, ¶ 134.

The defendant has no one to blame for his criminal conduct but himself.   His proficiency with computers, coupled with his family's support despite his repeatedly anti-social conduct as a young person, provided him with an opportunity to live a respectable and decent life. Unfortunately, the defendant's history and characteristics demonstrate a recurrent inability to abide by the law.   His inability to abide by the law merits a significant period of imprisonment.

**D.     The need for the sentence imposed (i) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (ii) to afford adequate deterrence; and (iii) to protect the public from further crimes of the defendant.**

Here, a Guidelines sentence at an offense level 35 (pre-departure) is also reasonable in light of the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate specific and general deterrence.   For over a

16

four-year period, the defendant engaged in a massive bribery, kickback, and fraud scheme.   The amounts of the bribe payments involved in the scheme were already off the charts, but were nevertheless continuing on an intensifying upward trajectory due to the insatiable greed of the defendant and his co-conspirators.   Those bribe payments, alone, would merit substantial time in a federal prison.   But the defendant also was convicted of attempting to steer a nearly $1 billion government contract to his company.   Such bid steering conduct, alone, would also merit years in a federal prison.   In addition, his scheme victimized a federal agency, USACE, whose primary mission supported Army and Air Force installations around the World, including war zones.   In effect, Cho took money intended to improve the effectiveness of our nation's war fighters and spent it on himself and his crooked partners.   Taken together, the Guidelines range of 188-235 months (pre-departure) reflects the seriousness of the bribery, kickback, and bid-steering schemes and provides just punishment for those offenses.

The need to specifically deter the defendant from engaging in future criminal offenses also supports the reasonableness of a Guidelines range of 188-235 months (pre-departure).   As discussed above, the defendant had served five years in prison before embarking on the instant schemes.   His previous five-year sentence, however, did not deter him from engaging in massive bribery and fraud.   Such behavior demonstrates that he has no real regard for the laws that apply to him.

For similar reasons, the need to deter others from engaging in similar criminal conduct supports the reasonableness of a Guidelines range of 188-235 months (pre-departure).   Such a prison term would send a strong message to other government contractors that the criminal law will deal harshly with those who pay bribes or otherwise corrupt the federal contracting system on such a massive scale.

**E.      The kinds of sentences available**.

The maximum statutory term of imprisonment here is twenty years, *i.e.*, five years for conspiracy (Count One), and fifteen years for bribery (Count Two).   The Court may also impose a term of supervised release of not more than three years for Counts One and Two (the supervised release terms must run concurrently).

According to the PSR, the defendant does not have the ability, based on the forfeiture agreement and mandatory restitution, to pay a fine in addition to restitution.   *See* PSR at p. 33, ¶ 185.

**F.      The sentencing range established by the Guidelines.**

As discussed above, the government maintains that the appropriate adjusted offense level is 35 (pre-departure).   With a Criminal History category II, which the PSR has recommended, the resulting advisory sentencing range under the Guidelines is 188-235 months.   As stated above, the

government recommends a six-level downward departure under USSG § 5K1.1 based on the defendant's substantial assistance, for an adjusted total offense level of 29 (97-121).   The government also recommends a six-month downward departure based on the defendant's likely deportation following any period of incarceration.

The Probation Office calculated the adjusted offense level as 36 (pre-departure) and a Criminal History category II, which results in a range of 210-262 months.   *See* PSR at p. 33, ¶ 188.

### G.     Any pertinent policy statement issued by the United States Sentencing Commission.

As stated above, the government has moved for a three-level downward departure under Section 5K1.1 of the Guidelines.

### H.     The need to avoid unwarranted sentencing disparities among defendants with similar records.

A Guidelines sentence at an offense level 35 (pre-departure) would also be reasonable in light of the need to prevent disparities between the defendant and defendants in similar cases. Due to the magnitude of the fraud involved here, the government had difficulty finding similarly situated defendants.   Nevertheless, the government has prepared a sentencing chart depicting sentences in the last five years involving public officials and government contractors involved in bribery-related offenses.[14]   The closest comparison to the defendant in terms of government contractors appears to be Terry Hall.   *See United States v. Terry Hall*, (S.D. Ala. 2012).   Hall was a government contract who paid $3 million in unlawful payments to a public official to obtain more than $20 million in government contracts.   Hall testified against the crooked public official

---

[14]     The chart is attached hereto as Tab 2.   The government obtained the information on the chart from public records, specifically press releases, court filings, and annual reports prepared by the Department of Justice, Criminal Division, Public Integrity Section.

and the official's wife.  His sentence of 39 months for $3 million in unlawful payments is relatively proportional to the government's recommended sentence of Cho for 106 months (pre-*Smith* departure) for over $17 million in unlawful payments.

In addition, a post-departure sentence of 100 months imprisonment would be reasonable in light of the government's prior recommendations for similarly situated defendants in this investigation:

| Defendant | Offense Level and Range Per Plea Agreement (Pre-5K) | Substantial Assistance in the Investigation and Prosecution of Others | Actual Sentence | % Off Time to be Served (from Bottom of Range) |
|---|---|---|---|---|
| Alex Cho | 35 (188-235) (Plea)<br><br>36 (210-262) (PSR) | Michael Alexander; Harold Babb; Min Cho; Larry Corbett; Kerry Khan; Lee Khan; Nazim Khan; Thomas Kwon; Nova Datacom; Nick Park; and Public Official C | *106*<br><br>*(government recommendation, pre-<u>Smith</u> departure)* | 44% (plea)<br><br>50% (PSR) |
| Kerry Khan | 39 (262-327) | Harold Babb; Min Cho; Larry Corbett; Lee Khan; Nazim Khan; and Public Official C | 235 months | 10% |
| Michael Alexander | 31 (108-135) | Harold Babb; Kerry Khan | 72 months | 33% |
| Harold Babb | 33 (135-168) | Kerry Khan | 87 months | 36% |
| James Miller | 33 (135-168) | Harold Babb; Kerry Khan | 70 months | 48% |
| Robert McKinney | 25 (57-71) | Kerry Khan; Nazim Khan | 33 months | 42% |

| Larry Corbett | 23 (46-57) | Kerry Khan; Chae Chong | 27 months | 41% |
| Theodoros Hallas | 19 (30-37) | Alex Cho; Nova Datacom | 18 months | 40% |

**I.      The need to provide restitution.**

The government has calculated the amount of restitution owed by the defendant as $17,220,247.83.   Restitution is owed to USACE.

The defendant is jointly and severally liable for the entire $17,220,247.83 with:

| Defendant | Case Number |
|-----------|-------------|
| Min Cho | 13-cr-83 |
| Nova Datacom | 13-cr-84 |

The defendant is jointly and severally liable for up to $17,220,247.83 of the $32,553,252.93 in restitution ordered for:

| Defendant | Case Number |
|-----------|-------------|
| Kerry Khan | 11-cr-276-1 |

The following individuals are jointly and severally liable for Alex Cho's restitution amount up to the following amounts:

| Defendant | Case Number | Restitution Amount Jointly and Severally Liable with Alex Cho |
|-----------|-------------|--------------------------------------------------------------|
| Lee Khan | 11-cr-276-2 | $401,000 |
| Michael Alexander | 11-cr-276-3 | $1,250,000 |

## CONCLUSION

For the foregoing reasons, the government respectfully moves for a downward departure under U.S.S.G. § 5K1.1, with a recommended downward departure of six levels, resulting in an adjusted total offense level of 35 (188-235 months).   The government also moves for a six-month

downward departure under *Smith* v. *United States,* 27 F.3d 649 (D.C. Cir. 1994), due to the likelihood that the defendant's immigration status will change to that of a deportable alien and, thus, he may be subjected to harsher conditions of imprisonment than an otherwise identical citizen would face.  As a result, the government specifically recommends a sentence of 100 months imprisonment, three years of supervised release, forfeiture in the amount of $_____, and restitution in the amount of $17,220,247.83 payable to the United States Army Corps of Engineers ("USACE").

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
For the District of Columbia


By: _____/s/_____
MICHAEL K. ATKINSON
BRYAN SEELEY
ANTHONY D. SALER
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.   20530
(202) 252-7817 (Atkinson)
Michael.Atkinson2@usdoj.gov

Dated: October 29, 2013