UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                    )<br>)<br>YOUNG N. CHO,                               )<br>)<br>        Defendant.                  )<br>_____ ) | Case No. 11-cr-00267 (EGS) |

### DECLARATION OF STEVEN J. MCCOOL

1. I, Steven J. McCool, am over 18 years of age and am competent to testify.

2. In late February 2011, I met Mr. Young N. Cho, also known as Alex Cho, for the first time. I am a criminal defense attorney and Mr. Cho was looking to hire one. Shortly after our initial meeting, Mr. Cho hired my law firm to represent him in what became this pending criminal matter. My firm continued to represent him until early 2013. By email dated December 31, 2014, Mr. Cho's current attorney, William Cowden, sent a declaration for my review and signature. Upon request, on January 3, 2014, Mr. Cho and Mr. Cowden executed a waiver of attorney-client privilege, work-product doctrine and written consent to disclosure ("waiver"). This waiver is attached to this declaration.

3. In early March 2011, Mr. Cho began to debrief with law enforcement officers and prosecutors from the United States Attorney's Office for the District of Columbia ("USAO") about his knowledge of and involvement in bribery involving various government contractors and officials at the U.S. Army Corps of Engineers ("USACE") who administered certain USACE contracts.

4. Beginning in early March 2011, and continuing until the government disclosed its investigation through execution of search warrants and public arrests of USACE officials in or about October 2011, Mr. Cho cooperated in an undercover capacity with the government in its investigation into bribery involving USACE employees and USACE contractors. During his cooperation, Mr. Cho debriefed extensively and engaged in numerous recorded conversations with numerous targets and subjects of the government's USACE contracting investigation. Mr. Cho continued to cooperate in a non-undercover capacity after October 2011.

5. Mr. Cho did not start cooperating with the government pursuant to the terms of a plea agreement. Instead, while he was cooperating, Mr. Cowden, who was working with me on this matter at the time, and I engaged in plea discussions with prosecutors at the USAO. On numerous occasions from March through September 2011, I spoke with and communicated by email with USAO prosecutors Michael Atkinson and Bryan Seeley. Mr. Cho's primary concerns, which I expressed to the government during ongoing plea negotiations, were (1) reducing his exposure to incarceration while maintaining his ability to remain in this country with his family, and (2) eliminating his financial responsibility to the government by repaying all of the overhead he, his



sister and Nova Datacom retained, and by assisting the government in tracing dirty funds and seizing tainted assets that others received. "Overhead" is a term the government used during plea negotiations, which the prosecutors defined as money included in contracts that was promised but not paid out as bribes and were under Mr. Cho's, his sister's or Nova Datacom's control.

6. On about August 22, 2011, while plea discussions were ongoing, Mr. Cowden and I met with Ron Machen and Tom Hibarger at the USAO to discuss, primarily, Mr. Cho's post-conviction immigration status.

7. During this August 2011 meeting at the USAO, I indicated that Mr. Cho was concerned about how his eventual guilty plea would impact his ability to remain in this country with his family. (Mr. Cho's wife and his two children are U.S. citizens, but Mr. Cho is not.) After speaking with Mr. Machen and Mr. Hibarger, I understood that, if Mr. Cho adhered to his obligations under the eventual plea agreement, at the time of Mr. Cho's sentencing, Mr. Machen would make Mr. Cho's cooperation known to the Director of U.S. Immigration and Customs Enforcement ("ICE") or a high-ranking ICE official and, if appropriate, request that ICE defer action on Mr. Cho's removal.

8. With respect to the forfeiture issues in this case, it is my recollection that the government agreed only to forfeit monies that Mr. Cho, his sister, Min Cho and Nova Datacom retained, and that it would not seek to hold Mr. Cho responsible for money paid to Kerry Khan or other targets of its investigation. My recollection is supported, in part, by the following. During the course of our representation of Mr. Cho, he delivered a large amount of cash to me at my office. I immediately notified the prosecutors handling this case. After FBI agents seized the cash, a portion of those proceeds was given, with the consent of the prosecutors, to Mr. Cho's wife, because it was not directly tied to criminal activity. It was not seized as substitute assets. Also, after securing separate counsel for Mrs. Cho, my partner, Joe Mallon negotiated the resolution of a civil judgment against Mr. and Mrs. Cho, on Mr. Cho's behalf, under which the government received a percentage of the profits from the sale of Mr. Cho's home, the claimant received a percentage, and Mrs. Cho received the remainder. The monies received by Mrs. Cho were not seized as substitute assets. With respect to the forfeiture issue, it is also my recollection that Mr. Cho was to receive credit for taxes paid on the overhead amounts he had previously retained.

9. In November 2011, the government requested that Mr. Cho be detained pending sentencing. The government alleged that Mr. Cho might not receive credit for having provided substantial assistance to the government, because the government learned on or about November 2, 2011, through Thomas Kwon and/or his attorney, that Mr. Cho had previously signaled to Mr. Kwon that Mr. Cho was wearing a recording device. The government said then that this conduct amounted to obstruction of justice, and it formed the basis of its motion to change Mr. Cho's bond status. Although the Court invited Mr. Cho to move for reconsideration of its decision to detain him pending his sentencing, the government told me that it would move for Mr. Cho's immediate sentencing should Mr. Cho request reconsideration.



10. After Mr. Cho's bond was revoked in November 2011, Mr. Machen told me that he did not intend reach out to the Director of ICE to assist Mr. Cho with his immigration status, because Mr. Cho had violated the terms of the plea agreement.

* * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my present recollection. Executed on January 5, 2014.

_____  1-6-14
Steven J. McCool

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 11-cr-267 (EGS)
YOUNG N. CHO, also known ) The Honorable Emmett G. Sullivan
as, ALEX N. CHO, )
)
Defendant. )
_____ )

## WAIVER OF ATTORNEY-CLIENT PRIVILEGE, WORK-PRODUCT PROTECTION AND WRITTEN CONSENT TO DISCLOSURE

1. I, Young N. Cho, (*aka* Alex N. Cho), had previously retained Steven J. McCool, his partners, associates, agents, and Mallon & McCool, LLC (collectively herein "the law firm") to represent me in the above-captioned case and on other legal matters.

2. I understand that I had an attorney-client relationship with Mr. McCool and others associated with the law firm.

3. I understand that the "attorney-client privilege" is designed to protect communications (made for the purpose of seeking, obtaining or providing legal assistance) between me and the law firm from disclosure to third parties.

4. I understand that the "work product privilege" is designed to protect documents and tangible things prepared by the law firm in anticipation of litigation or for trial from disclosure to third parties.

5. I understand that I am the holder of the attorney-client privilege, and I maybe be the holder of the attorney-work product privilege.

6. I hereby expressly waive and fully authorize Mr. McCool and anyone associated with the law firm to disclose any communications or work product that could be deemed to be privileged.

1

7. I represent that there was no force or threat to me by anyone for me to prepare and sign this waiver of confidentiality and consent to disclose any communications or work product that could be deemed to be privileged.

8. I hereby agree that I will not, directly or indirectly, seek to hold Mr. McCool or anyone associated with him or the law firm, whether during or after the attorney-client relationship, liable for disclosing and/or discussing confidential and/or privileged communications or work product upon the execution of this waiver agreement.

9. I hereby acknowledge that I have been advised to seek independent counsel advice on this waiver agreement before execution, and have done so or waived the opportunity to seek independent counsel advice in connection with this waiver.

AGREED & ACCEPTED:

_____
Young N. Cho
(aka Alex N. Cho)

1/3/2014
Date

_____
William R. Cowden
Counsel for
Young N. Cho
(aka Alex N. Cho)

1/3/2014
Date

2

LEGAL\17982274\1